THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PHILLIP WALKER, Defendant-Appellant.

Fifth District   No. 75-262

Opinion filed January 19, 1977.—Rehearing denied March 1, 1977.

E. Charles Geittmann and Terry J. Foster, both of Geittmann & Foster, of Metropolis, for appellant.

James G. Gullett, State's Attorney, of Elizabethtown (Bruce D. Irish, of Illinois State's Attorneys Association, and M. Lucinda Awerkamp, law student, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This cause is an appeal by the defendant, Phillip Walker, from a judgment of conviction for the crime of unlawful delivery of cannabis entered by the circuit court of Hardin County, pursuant to a jury verdict of guilty. Three issues are presented for review in this court, to-wit: Did the trial court err in denying the defendant's motion to suppress evidence as illegally seized, did the trial court err in denying the defendant's motion to suppress defendant's confession, and did the trial court err in denying defendant's motion to dismiss for failure to receive a speedy trial pursuant to section 103—5(b) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(b)).

It is necessary to examine the factual background with regard to the defendant's first two contentions. On March 4, 1974, pursuant to an investigation, conducted by the office of the Hardin County sheriff, sheriff's deputies arrested Kevin Vinyard for possession of cannabis. At the time of his arrest, Vinyard allowed an inspection of his truck after he was told that if he refused, the sheriff's department would take legal steps and obtain permission to search it. That search produced three bags of a green, leafy substance believed to be cannabis. After that discovery, Vinyard told police he believed the substance to be marijuana and, further, that he had obtained that marijuana from the defendant, Phillip Walker, in exchange for an automobile. The Hardin County sheriff's office then telephoned the office of the sheriff of neighboring Pope County and requested only that his office take the defendant into custody and hold him until Hardin County officials could arrive. Late in the afternoon Pope County deputies arrested the defendant in Pope County. Upon notification of defendant's arrest, the Hardin County sheriff's office dispatched two officers to Pope County where they arrested the

defendant without a warrant at 5:30 p.m. and, after advising defendant of his rights, as required by law, returned with the defendant in custody to the Hardin County courthouse. They arrived there at approximately 6:30 p.m. The defendant was not taken before a judge in Pope County. On arrival, the defendant was placed in a jury room where he was held until approximately 9:05 p.m. while the sheriff's office was questioning other persons. He was not provided any dinner as the dinner hour had ended prior to defendant's return. Defendant was then taken to the sheriff's office, advised of his rights and, after one hour and ten minutes of questioning, signed a statement admitting delivery of cannabis to Vinyard in exchange for an automobile. He was thereafter charged by criminal complaint with unlawful delivery of cannabis and, after posting bail, was released.

■■ The defendant's first contention, that the cannabis seized in Vinyard's truck was inadmissible against the defendant by reason of an illegal search of Vinyard's truck, is premised entirely upon defendant's ability to assert an alleged infringement of Vinyard's constitutional right against unreasonable searches and seizures. This defendant may not do. The defendant lacks standing as a person aggrieved to raise any such alleged infringement. As the United States Supreme Court said in *Jones v. United States*, 362 U.S. 257, 261, 4 L. Ed. 2d 697, 702, 80 S. Ct. 725, 731:

> "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else * * * ."

This rule applied in Illinois, *People v. McNeil*, 53 Ill. 2d 187, 290 N.E.2d 602.

The second contention of the defendant, that his confession was involuntary and should have been suppressed, raises a considerably closer question. The defendant argues that he did not give the confession voluntarily, and that it was in fact obtained in violation of his Fifth Amendment right to be free from self-incrimination. Defendant also argues that the confession was obtained by means of an illegal seizure of his person in violation of his rights under the Fourth Amendment to the United States Constitution.

The States raises the issue of whether this issue was properly preserved for purposes of appeal. The denial of pretrial motions is given as one ground for reversal although all the motions are not stated specifically. In this case, we believe the reference to "pretrial motions" is sufficient to preserve the issue for appeal.

No question is raised on this appeal as to whether the defendant was

adequately advised of his rights as prescribed in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The question is, having been so advised, did the defendant waive those basic constitutional rights voluntarily, knowingly and intelligently. The rule in Illinois is clearly stated in *People v. Prim*, 53 Ill. 2d 62, 70, 289 N.E.2d 601:

"Whether a statement is voluntarily given depends upon the totality of the circumstances. The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. (*People v. Hester*, 39 Ill. 2d 489.) In making its decision the trial court need not be convinced beyond a reasonable doubt, and the finding of the trial court that the statement was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence. (*Lego v. Twomey*, 404 U.S. 477, 30 L. Ed. 2d 618, 92 S. Ct. 619; *People v. Higgins*, 50 Ill. 2d 221; *People v. Johnson*, 44 Ill. 2d 463.)"

The defendant was arrested without a warrant, and transported from Pope County to Hardin County without having first been advised of his rights by a judge in Pope County. This was in violation of section 109—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 109—1) which provides:

"(a) A person arrested without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county, and a charge shall be filed. A person arrested on a warrant shall be taken without unnecessary delay before the judge who issued the warrant or if he is absent or unable to act before the nearest or most accessible judge in the same county.

(b) The judge shall:

(1) Inform the defendant of the charge against him and shall provide him with a copy of the charge.

(2) Advise the defendant of his right to counsel and if indigent shall appoint a public defender or licensed attorney at law of this state to represent him in accordance with the provisions of Section 113—3 of this Code.

(3) Hold a preliminary hearing in those cases where the judge is without jurisdiction to try the offense; and

(4) Admit the defendant to bail in accordance with the provisions of Article 110 of this Code."

We consider this failure to comply with the statute as improper conduct on the part of the officers involved. However, the failure to comply with the statute does not in and of itself require the exclusion of statements made by the defendant (*People v. Brooks*, 51 Ill. 2d 156, 165, 287 N.E.2d 326), nor as a matter of logic, does such conduct cast a pale on the

voluntary or involuntary nature of a confession. We also find it reprehensible that the sheriff's office would hold a 17-year-old man in custody over the dinner hour without providing him food, although the record does not disclose that defendant asked for, or complained of lack of food, nor that it was known that defendant had not been fed in Pope County.

■■ These factors taken together, however, when viewed in light of the rule set forth in *People v. Prim*, 53 Ill. 2d 69, 289 N.E.2d 601, are not sufficient to convince this court that the trial court's finding that the confession was voluntary is contrary to the manifest weight of the evidence.

The defendant's corollary argument that the confession was the product of an illegal seizure of his person is premised on the fact that the transcript herein discloses that the Pope County deputies, who initially arrested the defendant, did not have personal knowledge of facts sufficient to give rise to the probable cause required for a warrantless arrest. Section 107—2(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c)) provides:

"A peace officer may arrest a person when:

* * *

(c) He has reasonable grounds to believe that the person is committing or has committed an offense."

This standard was more fully addressed by this court in *People v. Harden*, 24 Ill. App. 3d 304, 320 N.E.2d 587, where we said at pages 307-08:

"This same element of probable cause is one of constitutional dimension which must be demonstrated from the attending circumstances of the case as reasonably existing in the mind of the arresting officer at the moment his arrest of the accused is effectuated. (*Beck v. Ohio*, 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223.) As stated in *People v. Brooks*, 13 Ill. App. 3d 1003, 1006, 301 N.E.2d 496, 498:

'This belief may be founded on hearsay evidence and on factual and practical considerations of everyday life upon which reasonable, prudent men, not legal technicians, operate. The question of whether probable cause exists depends on the facts of each individual case. See *People v. Colbert*, 10 Ill. App. 3d 758, 760, [295 N.E.2d 225] (1973), and cases cited therein.' "

■■ Defendant does not contend, nor can he on the face of the record herein, that the Hardin County sheriff did not himself have sufficient probable cause to arrest him, but merely that that probable cause did not extend to the sheriff's office of Pope County. The defendant does contend on his appeal that the two Hardin County officers who re-arrested him

did not have probable cause to arrest him. We have closely examined the transcripts herein of the preliminary hearing, the motion hearing and the trial itself and, while the officers in question were not particularly artful in stating the basis upon which the re-arrest was made, we do find ample basis to conclude that they in fact had sufficient personal knowledge to constitute probable cause to believe that the defendant had committed the crime of which he was ultimately convicted.

As was held in *People v. Peak*, 29 Ill. 2d 343, 349, 194 N.E.2d 322:
> "When the officers are working together * * * the knowledge of each is the knowledge of all and the arresting officer had the right to rely on the knowledge of the officer giving the command * * *. [Citation.]" See also for this proposition *People v. Butler*, 12 Ill. App. 3d 541, 545, 298 N.E.2d 798; *People v. Beard*, 35 Ill. App. 3d 725, 728-29, 342 N.E.2d 343.

Here the sheriffs of Pope and Hardin Counties had not been working together on this particular case, nor could the sheriff of Hardin County give a "command" to the sheriff of Pope County. However, cooperation between different county law-enforcement units is particularly necessary in geographically large, sparsely populated counties such as these and we believe that the cooperation exhibited herein does fall within the purview of the rule set forth in these cases.

Defendant's final contention, that the trial court erred in denying his motion to dismiss for failure to receive a speedy trial, is premised on the commonly designated 160-day rule of section 103—5(b) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(b)). Again, as with defendant's first two contentions, it is necessary to examine the factual underpinning of this argument.

On March 5, 1974, the defendant was charged by criminal complaint, bail was set, the defendant posted bond and was released. On March 12, 1974, the defendant by retained counsel made a demand for speedy trial under the statute and the cause was set down for jury trial on July 30, 1974. On July 15, 1974, the defendant filed a motion for a continuance which motion was subsequently granted and the cause was reset for October 15, 1974. In mid-October, 1974, an indefinite continuance was granted by the trial court; the question of who made that motion is contested and crucial, and we shall return to a consideration of it subsequently. On December 3, 1974, defendant's privately retained counsel made a motion to withdraw, which motion was granted on December 13, 1974. By letter dated December 18, 1974, the defendant was ordered to appear on January 7, 1975. On that date the defendant appeared, and having filed the requisite affidavit, was assigned appointed counsel. On January 31, 1975, defendant's appointed counsel filed a

motion for discovery. At some date in February the State's Attorney and defendant's appointed counsel conferred. On March 21, 1975, the State filed a discovery motion and on March 24, 1975, the State answered defendant's discovery motion. On April 11, 1975, defendant's appointed counsel filed a motion to dismiss for lack of a speedy trial. This motion was denied on April 22, 1975, and the trial commenced on April 23, 1975.

It is our opinion that two events are determinative of this question. If the defendant requested the continuance, or agreed to it, in October 1974 the question is controlled by the rule enunciated in *People v. Siglar*, 49 Ill. 2d 491, 497, 274 N.E.2d 65, to-wit:

> "In *People v. Williams*, 403 Ill. 429, 432, we stated: 'The failure to try him within the statutory period was due to his agreement to an indefinite continuance; hence the statute does not apply.' Such was the circumstance in this case. It is in the interest of the defendant, the People and the Court, that all continuances be made to a day certain. Indefinite continuances are an anathema to the law."

Secondly, if the defendant affirmatively agreed to a trial date later than the last day of the 160-day period, as computed from whatever date, the defendant will be estopped to here complain that that agreed date was beyond the 160-day mark.

■■ In the defendant's motion to dismiss filed April 11, 1975, paragraph (d) the defendant by his appointed counsel states that it was defendant's retained counsel at defendant's request that requested and received the October 1974 continuance. Thus, although it is settled law that no new demand for speedy trial need be made—when the delay caused by defendant terminates, the statutory period begins to run anew (*People v. Cornwell*, 9 Ill. App. 3d 799, 801, 802, 293 N.E.2d 139), the earliest date thereafter that the statute could have begun to run again would have been December 3, 1974, which date was within 160 days of the trial's commencement.

More importantly, on April 22, 1975, defendant's appointed counsel, while arguing his motion to dismiss for lack of a speedy trial, referred to the February 1975 conversation between himself and the State's Attorney by stating in pertinent part:

> "I was informed I think in January that I would represent Mr. Walker. I have not asked for any continuances on his behalf. I think Mr. Baker in oral conversation stated that he would like to have a pretrial in February and I said I would not be available at that time, but there was never any trial date set but *we agreed upon today* * * *." (Emphasis added.)

As defendant by his counsel agreed on the trial date, he will not now be heard to complain that it was without the 160-day period, even assuming

*ad arguendo* that it was. *People v. Canada*, 81 Ill. App. 2d 220, 227-229, 225 N.E.2d 639, and cases cited therein.

We therefore affirm.

Affirmed.

KARNS, J., concurs.

G. J. MORAN, J., dissents without opinion.